IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:12-cv-3431 |
| | ) | |
| JOHN HATCHETT CARNEY, individually and doing | ) | |
| business as JOHN H. CARNEY & ASSOCIATES, | ) | |
| NORMA L. CARNEY, AS TRUSTEE OF THE | ) | |
| HATCHETT TRUST, THE JOHN HATCHETT | ) | |
| CARNEY TRUST, AND THE JOHN HENRY | ) | |
| CARNEY TRUST; JEANNE CARNEY GREGORY, | ) | |
| PETER HATCHETT  GRYSKA, PAUL VONRYLL | ) | |
| GRYSKA,  JOHN SCOTT GRYSKA, and | ) | |
| ALEXANDER GRYSKA, | ) | |
| Defendants. | ) | |

## UNITED STATES' AMENDED COMPLAINT

Plaintiff, the United States of America, for its Amended Complaint, which is commenced

pursuant to Internal Revenue Code [26 U.S.C.] §§ 7401 and 7403, at the direction of the Attorney

General of the United States, and with the authorization and at the request of Chief Counsel, Internal

Revenue Service, a delegate of the Secretary of the Treasury, alleges as follows:

1.      This is an action by the United States against Defendant John Hatchett Carney,

individually and doing business as John H. Carney & Associates, to reduce to judgment his federal

income (1040) tax, employment (941) tax, and unemployment (940) tax, and for a judicial

foreclosure and sale of real properties in this district in which Carney has an interest.  The United

States also seeks to enjoin John Carney from pyramiding employment taxes and violating the

provisions of the Internal Revenue Code.   The other defendants are joined as parties to this action

pursuant to 26 U.S.C. § 7403(b), because they have or may claim an interest in the real properties

that are the subject of this action.  This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402.  Venue is proper in this Court under 28 U.S.C. § 1391(b).

2.      Defendant John Hatchett Carney, a Texas attorney, is the individual taxpayer, who resides in this district.  He is being sued to reduce his **$5.3 million** federal income (1040) tax, employment (941) tax, and unemployment (940) tax debt to judgment, and to foreclose on and sell the real properties that are the subject of this action for payment of Carney's tax debt.  In addition, the United States seeks injunctive relief against Carney, to prevent him from pyramiding future employment taxes.

3.      Defendant Norma L. Carney is an individual resident of Dallas, Texas, and she is the mother of John Hatchett Carney.  Mrs. Carney is the trustee of the Hatchett Trust,  the John Hatchett Carney Trust, and the John Henry Carney Trust.   She is being joined as a defendant per 26 U.S.C. § 7403(b), because the Trusts may claim an interest in the real properties that are the subject of this lawsuit.  John Hatchett Carney is the sole beneficiary of the Hatchett Trust and the John Hatchett Carney Trust, and is a beneficiary of the John Henry Carney Trust.

4.      Defendant Jeanne Carney Gregory is an individual resident of the State of Texas, and is the sister of John Hatchett Carney.   She is joined a defendant per 26 U.S.C. § 7403(b), because she has or may claim an interest in some of the real properties that are the subject of this lawsuit.

5.      Defendant Peter Hatchett Gryska is an individual resident of the State of Texas, and is the attorney-in-fact for Defendants John Scott Gryska, Paul Vonryll Gryska, and Alexander Gryska as to some of the real properties made the subject of this lawsuit.  He is a cousin of John Hatchett Carney, and is being joined as a defendant per 26 U.S.C. § 7403(b), because he has or may claim an interest in these real properties.  He may be served at 5103 Cheena Drive in Houston, Texas

Page 2

77096.

6. Defendant Paul Vonryll Gryska is an individual resident of the State of Massachusetts. He is a cousin of John Hatchett Carney, and is being joined as a defendant per 26 U.S.C. § 7403(b), because he has or may claim an interest in some of the real properties made the subject of this lawsuit. He may be served at 90 Centre Street in Dover, Massachusetts 02030.

7. Defendant John Scott Gryska is an individual resident of the State of Massachusetts. He is a cousin of John Hatchett Carney, and is being joined as a defendant per 26 U.S.C. § 7403(b), because he has or may claim an interest in some of the real properties made the subject of this lawsuit. He may be served at 166 Benvenue Street, Wellesley, Massachusetts 02482.

8. Defendant Alexander Gryska is an individual resident of the State of Massachusetts. He is a cousin of John Hatchett Carney, and is being joined as a defendant per 26 U.S.C. § 7403(b), because he has or may claim an interest in some of the real properties made the subject of this lawsuit. He may be served at 15 Upland Way, Marion, Massachusetts 02738.

## BACKGROUND AND FACTS

### A. TAX LIABILITIES

9. In 1981, John Carney graduated from Southern Methodist University School of Law, and was licensed to practice law in Texas. He is a practicing attorney, and he operates his own law firm known as John H. Carney & Associates, a sole proprietorship through which he at one time employed 27 people. He has failed to pay his federal personal and business tax debts for decades. Also according to his Wells Fargo Bank business account application, the annual gross sales of his law firm is $5,000,000.

10. On the dates shown below, a delegate of the Secretary of the Treasury made

assessments against, and gave notice and demand to, John Carney, for his unpaid federal income

(1040) tax for the tax years 1984, 1985, 1986, 1987, 1989, 1993, 2001, 2002, 2003, 2004, 2005,

2006, 2007, 2008, 2009, and 2010; as well as federal employment (941) taxes. Carney's 1984-1987,

1989, 1992, and 1993 income tax, and employment tax for periods in 1992, 1994, 1995, and 1996,

was reduced to judgment on or about December 8, 1999, as discussed below.   This judgment

extended the statute of limitations for collecting these taxes for 20 years, and as of August 20, 2012,

the balance of the income taxes reduced to judgment was **$986,374.42.**  The amounts of Carney's

taxes are shown in the following charts:

Individual Liabilities through 08/20/2012

| Type of Tax | Tax Period | Assessment Date | Assessed Balance | Accrued Interest | Accrued Penalty | Total |
|---|---|---|---|---|---|---|
| 1040 | 1984 | 08/11/97 | $194,041.78 | $125,070.56 | $0.00 | $319,112.34 |
| 1040 | 1985 | 08/11/97 | $334,698.10 | $212,985.60 | $86.54 | $547,770.24 |
| 1040 | 1986 | 07/16/97 | $19,614.69 | $30,074.22 | $1,027.00 | $50,715.91 |
| 1040 | 1987 | 07/16/97 | $2,439.61 | $3,746.16 | $197.75 | $6,383.52 |
| 1040 | 1989 | 07/16/97 | $2,348.07 | $3,605.71 | $258.75 | $6,212.53 |
| 1040 | 1993 | 08/16/99 | $26,474.88 | $29,705.00 | $0.00 | $56,179.88 |
| 1040 | 2001 | 11/25/02 | $25,771.86 | $16,121.71 | $0.01 | $41,893.58 |
| 1040 | 2002 | 11/17/03 | $60,108.66 | $30,284.58 | $0.00 | $90,393.24 |
| 1040 | 2003 | 12/06/04 | $30,261.33 | $13,436.42 | $0.00 | $43,697.75 |
| 1040 | 2004 | 11/14/05 | $86,563.03 | $34,739.90 | $0.00 | $121,302.93 |
| 1040 | 2005 | 11/13/06 | $19,509.77 | $5,667.60 | $0.00 | $25,177.37 |
| 1040 | 2006 | 03/31/08 | $67,747.08 | $12,162.76 | $0.00 | $79,909.84 |
| 1040 | 2007 | 11/24/08 | $58,085.13 | $8,309.06 | $1,071.68 | $67,465.87 |
| 1040 | 2008 | 12/07/09 | $8,606.87 | $890.39 | $1,066.65 | $10,563.91 |
| 1040 | 2009 | 12/06/10  08/06/12 | $65,297.34 | $0.00 | $0.00 | $65,297.34 |
| 1040 | 2010 | 11/28/11 | $52,893.89 | $1,166.05 | $2,678.17 | $56,738.11 |
| Totals | | | $1,054,244.09 | $527,965.72 | $6,386.55 | $1,588,814.36 |

Sole Proprietor Liabilities through 08/20/2012

| Type of Tax | Tax Period | Assessment Date | Assessed Balance | Accrued Interest | Accrued Penalty | Total |
|---|---|---|---|---|---|---|
| 941 | 06/30/00 | 05/24/04 | $0.00 | $12,165.35 | $0.00 | $12,165.35 |
| 941 | 09/30/00 | 05/24/04 | $33,747.97 | $18,608.87 | $625.89 | $52,982.73 |
| 941 | 12/31/00 | 05/24/04 | $40,300.45 | $22,221.80 | $1,096.24 | $63,618.49 |
| 941 | 03/31/01 | 06/28/04 | $46,769.37 | $25,444.26 | $1,555.53 | $73,769.16 |
| 941 | 06/30/01 | 06/28/04 | $47,947.88 | $26,085.19 | $2,042.08 | $76,075.15 |
| 941 | 09/30/01 | 06/28/04 | $44,299.30 | $24,100.05 | $2,316.80 | $70,716.15 |
| 941 | 12/31/01 | 06/28/04 | $49,420.72 | $26,886.09 | $3,084.42 | $79,391.23 |
| 941 | 03/31/02 | 06/28/04 | $71,029.45 | $38,641.47 | $5,174.45 | $114,845.37 |
| 941 | 06/30/02 | 06/28/04 | $68,321.45 | $37,168.05 | $5,722.72 | $111,212.22 |
| 941 | 09/30/02 | 06/28/04 | $84,050.11 | $45,724.34 | $7,997.14 | $137,771.59 |
| 941 | 12/31/02 | 06/28/04 | $85,148.13 | $46,321.31 | $9,107.01 | $140,576.45 |
| 941 | 03/31/03 | 06/28/04 | $107,058.53 | $58,240.35 | $12,746.25 | $178,045.13 |
| 941 | 06/30/03 | 06/28/04 | $89,954.39 | $48,935.25 | $11,846.65 | $150,736.29 |
| 941 | 09/30/03 | 06/28/04 | $85,759.94 | $46,653.09 | $12,414.18 | $144,827.21 |
| 941 | 12/31/03 | 06/28/04 | $81,812.79 | $44,503.70 | $14,318.61 | $140,635.10 |
| 941 | 03/31/04 | 07/12/04 | $38,559.42 | $20,880.22 | $7,671.48 | $67,111.12 |
| 941 | 06/30/04 | 09/20/04 | $76,473.28 | $40,508.42 | $15,533.89 | $132,515.59 |
| 941 | 09/30/04 | 11/22/04 | $57,528.52 | $29,734.09 | $11,774.70 | $99,037.31 |
| 941 | 12/31/04 | 03/21/05 | $4,242.05 | $2,090.51 | $0.00 | $6,332.56 |
| 941 | 03/31/05 | 07/04/05 | $44,947.25 | $21,004.72 | $8,563.76 | $74,515.73 |
| 941 | 06/30/05 | 10/10/05 | $68,932.04 | $30,564.84 | $13,657.65 | $113,154.53 |
| 941 | 09/30/05 | 01/02/06 | $37,342.86 | $15,697.96 | $6,811.20 | $59,852.02 |
| 941 | 12/31/05 | 03/27/06 | $44,576.61 | $17,725.64 | $9,052.67 | $71,354.92 |
| 941 | 03/31/06 | 07/31/06 | $85,315.77 | $29,935.97 | $0.00 | $115,251.74 |
| 941 | 06/30/06 | 09/18/06 | $76,863.04 | $24,852.79 | $0.00 | $101,715.83 |
| 941 | 09/30/06 | 01/08/07 | $58,614.74 | $16,972.77 | $0.01 | $75,587.52 |
| 941 | 12/31/06 | 04/02/07 | $96,389.35 | $25,753.74 | $0.00 | $122,143.09 |
| 941 | 03/31/07 | 08/06/07 | $76,970.94 | $18,246.11 | $0.00 | $95,217.05 |
| 941 | 06/30/07 | 09/10/07 | $89,047.44 | $19,820.98 | $0.00 | $108,868.42 |
| 941 | 09/30/07 | 01/07/08 | $69,428.70 | $13,608.35 | $0.00 | $83,037.05 |
| 941 | 12/31/07 | 03/24/08 | $124,310.13 | $22,369.45 | $0.00 | $146,679.58 |
| 941 | 03/31/08 | 06/30/08 | $91,870.16 | $14,998.33 | $0.00 | $106,868.49 |
| 941 | 06/30/08 | 10/06/08 | $117,443.09 | $17,561.21 | $0.00 | $135,004.30 |
| 941 | 12/31/08 | 03/16/09 & 10/18/10 | $227,063.44 | $27,585.18 | $8,143.94 | $262,792.56 |

| 941 | 03/31/09 | 07/06/09 | $124,759.36 | $13,472.18 | $0.00 | $138,231.54 |
| 941 | 06/30/09 | 09/14/09 | $133,743.77 | $13,375.97 | $1,442.84 | $148,562.58 |
| 941 | 09/30/09 | 12/21/09 | $118,306.99 | $10,471.18 | $2,922.27 | $131,700.44 |
| 941 | 12/31/09 | 04/05/10 | $107,392.57 | $8,390.32 | $3,546.59 | $119,329.48 |
| 941 | 03/31/10 | 06/21/10 | $113,653.69 | $8,083.45 | $6,405.60 | $128,142.74 |
| 941 | 06/30/10 | 09/20/10 | $91,627.69 | $5,741.76 | $6,336.47 | $103,705.92 |
| 941 | 09/30/10 | 12/20/10 | $94,446.25 | $5,089.43 | $6,687.46 | $106,223.14 |
| 941 | 12/31/10 | 04/11/11 | $52,799.64 | $2,446.80 | $4,606.93 | $59,853.37 |
| 941 | 03/31/11 | 06/13/11 | $73,940.28 | $2,898.02 | $5,804.98 | $82,643.28 |
| 941 | 06/30/11 | 10/17/11 | $79,333.97 | $2,020.40 | $4,707.89 | $86,062.26 |
| 941 | 09/30/11 | 12/19/11 | $70,076.82 | $1,410.85 | $4,511.13 | $75,998.80 |
| 941 | 12/31/11 | 02/27/12 | $4,074.03 | $58.53 | $0.00 | $4,132.56 |
| 941 | 06/30/12 | 08/20/12 | $3,887.28 | $0.00 | $0.00 | $3,887.28 |
| 940 | 1999 | 05/17/04 & 03/06/06 | $3,329.48 | $1,320.19 | $391.52 | $5,041.19 |
| 940 | 2010 | 10/17/11 | $402.54 | $10.29 | $0.00 | $412.83 |
| Totals | | | $3,493,313.67 | $1,006,399.82 | $218,620.95 | $4,718,334.44 |

**TOTAL TAX OWED BY JOHN CARNEY** .........................................................**$ 5,320,774.38**

(excluding income tax for 1984-1987, 1989, 1992, & 1993 previously reduced to judgment)

In addition to the total tax, interest, and penalties shown above, Carney is liable to the United States for interest, penalties, and statutory additions accruing after August 20, 2012 on these tax liabilities until paid.

11.     Despite notice and demand, Carney has failed to pay these federal tax liabilities.

**B.     HISTORY OF PYRAMIDING**

12.     Since 1992, Carney has been pyramiding employment tax through the operation of his law firm, John H. Carney & Associates, in Dallas, Texas.  As indicated above, his 1992, 1994, 1995, and 1996 federal employment tax was reduced to judgment in favor of the United States in 1999. In addition, the above chart shows that Carney accrued unpaid employment tax for nearly every quarter between June 30, 2000 and June 30, 2012, or for twelve years, in violation of the Internal

Revenue laws.  Despite numerous contacts by the IRS, Carney has continued his employment tax pyramiding, as recently as the last quarter for which an employment tax return was due before this lawsuit was filed.

## C.  FEDERAL TAX LIENS

13.   Pursuant to 26 U.S.C. § 6321, statutory federal tax liens arose by operation of law on the dates of assessment of the tax liabilities described above, and attached to all property or interests in property of John Carney on the dates of assessment or acquired thereafter.  On or about May 9, 2003, September 26, 2003, September 24, 2004, September 29, 2004, December 2, 2004, February 28, 2005, October 13, 2005, November 10, 2005, January 4, 2006, January 13, 2006, September 8, 2006, June 22, 2007, January 29, 2008, March 24, 2008, June 16, 2008, September 26, 2008, January 5, 2009, April 22, 2009, September 4, 2009, October 5, 2009, May 11, 2010, June 14, 2010, July 27, 2010, December 29, 2010, January 28, 2011, April 1, 2011, July 8, 2011, July 11, 2011, August 23, 2011, August 31, 2011, December 13, 2011, December 20, 2011, January 17, 2012, April 9, 2012, and April 11, 2012, notices of federal tax lien were filed against Carney, individually, and against John H. Carney & Associates, for his federal income (1040), employment (941), and unemployment (940) taxes, in Dallas County, Texas, to secure payment of Carney's federal tax liabilities described above.  These tax liens attach to all Carney's interests in property, regardless of record title.

14.   On or about August 31, 2012, notices of federal tax lien were filed against Carney individually, against John H. Carney & Associates, against John Henry Carney Trust, as nominee, transferee and owner of a beneficial interest of John H. Carney, and against John Hatchett Carney Trust, as nominee, transferee and owner of a beneficial interest of John H. Carney, to secure

payment of Carney's income and employment tax referred to above, in Callahan County, Baird, Texas. These tax liens attach to Carney's interests in property in Callahan County, Texas, regardless of record title.

## D. CARNEY'S FEDERAL TAX RETURN FILING AND PAYMENT HISTORY

15.    Besides pyramiding employment tax, Carney has a history of failing to timely file his federal employment tax returns for his law firm, understating his income tax liability, failing to make estimated tax payments, and failing to pay the tax due he reports on his tax returns, as shown by the following chronology:

| Date | Event |
|------|-------|
| 10/19/1987 | Carney filed zero balance income (1040) tax return for 1986 tax year. |
| 09/17/1988 | Carney filed 1987 1040 showing $244.00 balance due, no payment made |
| 07/16/1997 | IRS Examination made 1040 tax assessment against Carney for 1986, 1987 & 1989 tax years in the amount of $5,934.00 |
| 08/11/1997 | IRS Exam made 1040 assessment against Carney for 1984 & 1985 of $69,041.00 |
| 04/15/1998 | Extension filed by Carney for his 1997 1040, but no return was ever filed by him |
| 12/18/1998 | Carney late-filed his 1993 1040, balance due $11,889.00, no payment made |
| 10/18/1999 | Carney filed his 1998 1040; balance due $14,190.00, no payment made |
| 10/21/2001 | Carney filed his 2000 1040; balance due of $16,468.00, only paid $1,000.00 |
| 11/05/2001 | Carney late-filed his 1999 1040 with $5,809.60 due, no payment made |
| 10/17/2002 | Carney filed his 2001 1040 with $25,467.20 due, no payment made |
| 10/16/2003 | Carney filed his 2002 1040 with $47,303.90 due, no payment made |
| 10/22/2004 | Carney filed his 2003 1040 with balance due $28,091.90, no payment made |

10/18/2005   Carney filed his 2004 1040 with $73,166.00 balance, no payment made

| Date | Event |
|------|-------|

10/12/2006   Carney filed his 2005 1040 with balance of $18,638.00, no payment made

10/18/2007   Carney filed his 2006 1040 with balance due of $55,346.00, no payment made

10/24/2008   Carney filed his 2007 1040 with balance due of $54,192.00, no payment made

11/06/2009   Carney filed his 2008 1040 with balance due of $27,559.00, no payment made

11/01/2010   Carney filed his 2009 1040 with $60,355.00 balance due, no payment made

10/08/2011   Carney filed his 2010 1040 with balance due of $48,694.00, no payment made.

**E.   CARNEY'S TAX SHELTERS AND CREATION OF TRUSTS; IRS COLLECTIONS**

16.    Carney participated as a limited partner in the Cinema '84 and Cinema '85 limited partnerships ("the Cinema Partnerships") from 1984 through 1989.  On his tax returns for these years, Carney claimed deductions, depreciation, and tax credits with respect to his investments in the Cinema Partnerships.  In 1991, the IRS determined that the Cinema Partnerships were tax shelter investments lacking economic substance.  Consequently, partnership credits and deductions claimed by Carney were no longer viable.  In 1992, the Cinema Partnerships' tax matters partner petitioned the United States Tax Court for judicial review of the IRS's determination.  On September 1, 2000, the Tax Court dismissed the Cinema Partnerships' cases for failure to prosecute.  See  Carney v. IRS, 258 F.3d 415-417 (5th Cir. 2001).

17.    For many years, the Internal Revenue Service has attempted to collect Carney's large federal income and employment tax liabilities.  However, the IRS collection efforts have only resulted in the collection of a small fraction of his total tax debt, due to Carney's concealment of assets in the names of sham trusts and other entities, including, but not limited to, the following:

A.   The Cyclops Trust;
B.   The John Hatchett Carney & Rena Shah Carney Children's Trust;
C.   The Sean Carney Trust;
D.   The Shannon Carney Trust;
E.   The Carney Children's Trust;
F.   The Hatchett Trust, also known as the Hatchett Irrevocable Trust;
G.   The John Henry Carney Trust;
H.   The John Hatchett Carney Trust; and
I.   The Agreement of Trust between Thomas P. Jackson and John H. Carney & Associates, P.C. ("the Alleged Law Firm Trust", discussed below).

The following chronology shows some of the Government's tax-assessment and collection activities against Carney, and Carney's pattern of tax-avoidance.

| Date | Event |
|------|-------|
| 01/25/1995 | While federal income tax assessments against Carney were being proposed through an IRS audit, Carney filed a Chapter 7 bankruptcy. |
| 01/30/1995 | Bankruptcy court entered a restraining order and an amended restraining order preventing Carney from transferring assets during the pendency of his bankruptcy. |
| 02/22/1995 | Carney filed bankruptcy schedules claiming 3999 Goodfellow residence in Dallas was his homestead, although it then was titled to Hatchett Land & Dev. Co. |
| 06/01/1995 | Through his attorney, John Henry Carney, Carney's father, filed a proof of claim in his son John Hatchett Carney's bankruptcy in the amount of $29,671.52, allegedly for a loan secured by a 1986 Ford pickup and a 1987 Porsche 911. |
| 06/01/1995 | Through her attorney, Norma Carney filed a proof of claim in John Hatchett Carney's bankruptcy in the amount of $7,000.00, allegedly for a loan. |
| 12/23/1996 | Chapter 7 general discharge was entered in Carney's bankruptcy. |
| 02/18/1998 | Carney filed an adversary proceeding, objecting to the IRS proof of claim for income and employment tax, and claiming that the tax was discharged.  The IRS proof of claim in Carney's bankruptcy was in the amount of $337,381.69, for his 1984, 1985, 1986, 1987, 1989, 1992, and 1993 income (1040) tax, and for his employment (941) tax for periods ending March 31, 1992 to January 1995. |

| Date | Event |
|------|-------|

Date       Event

12/08/1999    Summary judgment was entered in favor of the United States (IRS) against Carney by U.S. Bankruptcy Judge Harold Abramson that Carney's 1984-1993 federal income tax, and his 1992-1996 federal employment tax, are non-dischargeable, and that he owes the tax, in his adversary proceeding. Carney later appealed to the U.S. District Court, which affirmed the Bankruptcy Court decision, and then to the Fifth Circuit Court of Appeals, which also affirmed the judgment.

03/11/2000    IRS sent Carney a final notice to pay his 1993, 1995, & 1998 income taxes

06/15/2000    District court order entered affirming summary judgment against Carney in tax adversary.

08/25/2000    United States served post-judgment interrogatories and a request for production of documents upon Carney in federal tax adversary filed by Carney.

10/04/2000    Carney served incomplete answers to the United States' post-judgment interrogatories, and failed to produce all the documents requested by the United States.

12/03/2000    United States took Carney's post-judgment deposition, wherein he was evasive, uncooperative, and refused to answer at least 14 questions, including what are the assets of Hatchett Land & Development Company.

12/18/2000    While Carney's Fifth Circuit appeal of the bankruptcy tax non-dischargeability decision was pending, the Hatchett Trust was created, with Carney as the beneficiary, and his parents, John Henry Carney and Norma Loesch Carney, as trustees. The Hatchett Trust holds title to Carney's expensive residence, discussed below. According to PlainsCapital Bank, the address for the Hatchett Trust is 5005 Greenville Avenue, Suite 200, Dallas, TX 75206; Carney's law office. Dolph Haas, Carney's office manager, is a signatory on trust bank account.

07/16/2001    Fifth Circuit Court of Appeals affirmed the bankruptcy and district court's determinations that Carney's federal income and employment tax is non-dischargeable, and published opinion at 258 F.3d 415 (5th Cir. 2001).

08/02/2001    United States files a motion to reopen tax adversary, to compel Carney to provide complete responses to post-judgment interrogatories, to produce documents, and to answer post-judgment deposition questions.

| Date | Event |
|------|-------|

11/16/2001   Bankruptcy court entered an order granting the Chapter 7 Trustee's objection to father John Henry Carney's proof of claim, disallowing the claim.

11/30/2001   Bankruptcy court entered order compelling debtor (Carney) to provide complete responses to post-judgment interrogatories, to produce documents, to answer post-judgment deposition questions, and ordering post-judgment deposition of John Henry Carney, Carney's father.

12/18/2001   John Henry Carney gave a post-judgment deposition to the United States, and claimed ownership of assets as to which John Hatchett Carney claimed ownership, such as the Goodfellow residence.

2001-2011   Carney filed his federal income tax returns for tax years 2000-2010 with tax balances due without sending checks to IRS to pay his taxes.  He withheld employment tax from his law firm employees' wages and failed to pay it to the IRS.

04/21/2003   Carney's Chapter 7 bankruptcy case is closed.

02/19/2004   IRS gave Carney final notice to pay his income tax for tax years 1999-2002.  Later, Carney refused to set up a special account for 941 taxes as requested by IRS.

09/01/2004   IRS Collection final demand letter hand-delivered to Carney for his unpaid employment (941) tax for all periods in 1999 & 2000

9/09/2004   IRS Revenue Officer ("RO") advised Carney to become current on federal tax deposits on his law firm and his personal estimated income (1040) tax payments.

10/05/2004   IRS Collection levy posts payments to Carney's 1040 tax for 1992, 1995, & 1999

02/01/2005   To prevent the IRS from seizing it, Carney withdrew $200,000.00 out of his law firm petty cash account and deposited it into his office manager's bank account.

02/04/2005   IRS Collection final notice issued to Carney's law firm for all (14) quarterly periods for tax years 2001, 2002, and 2003, and the first and second quarters of 2004.

03/03/2008   IRS Collection final demand letter sent to Carney for his law firm's employment taxes for periods from the first quarter 2006 to the second quarter 2007 ((6) periods).

| Date | Event |
|------|-------|

03/10/2008   Texas Wage Commission (TWC) information shows John H. Carney owns property at 3999 Goodfellow Drive in Dallas, Texas  75229.  However, from 2000-2005, this  property was titled to Hatchett Land & Dev. Co..  In 2005, Carney transferred this property to the Hatchett Trust, and sold it, and used some of the sales proceeds to renovate the Strait Lane residence, described below.

10/07/2010   IRS Collection final demand letter sent to Carney for 941 tax on second quarter 2010

12/21/2010   The John Hatchett Carney Trust was created, with Norma Loesch Carney, Carney's mother, as trustee.  Carney is the beneficiary of this trust.  Thereafter, on or about January 1, 2011, the Trust leased a 2006 Hummer vehicle to Carney that was previously owned by William Ravkind, Carney's attorney.

01/06/2011   IRS Revenue Officer made a field call to Carney's law office and spoke with Dolf Haas, Carney's office manager.  He refused to allow RO to make an inventory for collection purposes.

01/12/2011   IRS Collection letter mailed to Carney for 941 tax for third quarter 2010, and for 16 employment (941) tax periods from the first quarter 2006 to first quarter 2010.

03/15/2011   IRS Collection final notice letter sent to Carney for income (1040) taxes for 2003, 2004, 2005, 2006, 2007, 2008, and 2009.

03/15/2011   IRS letter sent to Carney advising him of enforcement action for income tax for tax years 1984, 1985, 1993, 1999, 2001, and 2002

05/13/2011   Carney submitted financial statement to IRS indicating that he is living beyond his means in extravagant style.  Income shown by Carney is $13,500 per month.

10/08/2011   Carney filed his income (1040) tax return for 2010 with balance due of $48,694.00; no payment sent in with tax return.

Oct. 2011-   IRS issued levies to third parties to collect Carney's federal taxes.
05/18/2012

**F.   CARNEY'S EFFORTS TO AVOID CREDITORS' CLAIMS & IRS**

18.   After Carney became indebted to the Internal Revenue Service, he used his father, John Henry Carney ("Mr. Carney"), to avoid creditors' claims, and to prevent his assets from being subjected to IRS seizure through his use of sham trusts and other entities.  For example, in December of 2000, after the $300,000 federal tax judgment was entered against Carney, and while Carney was still in bankruptcy and his father claimed to be a creditor in his bankruptcy, the Hatchett Trust was formed, into which Carney later transferred his Strait Lane residence.  Then in December of 2010, when Carney was indebted to the United States for millions of dollars in back taxes, the John Hatchett Carney Trust was formed, and the Callahan County, Texas acreage, described below, was transferred into that trust, from the John Henry Carney Trust into the John Hatchett Carney Trust.

19.   On October 22, 1993, Dennis Noebel obtained a judgment against Carney in the amount of $35,060.88 in Cause No. 93-07064-D, 95th Judicial District Court of Dallas County, Texas.  On January 25, 1995, in the same case, Noebel obtained a contempt judgment and sanction order against Carney.  This judgment found, among other things, that Carney had failed to comply with an order that he turn over to Noebel certain stock, cash, items, and documents specified in the turnover order.  Also in this judgment, the court found that Carney contended that the stock of his law firm, John H. Carney & Associates, was held by his two minor children in a trust referred to as "the Alleged Law Firm Trust".  The judgment also found that, under Texas Revised Civil Statutes Ann. Art. 1528e ("the Texas Professional Corporations Act" or "the Act"), Carney's children could not own any of Carney's law firm stock, that Carney was the legal owner of this stock, and that Carney improperly and fraudulently made loans to himself in violation of the Act, to shield his funds from creditors and to circumvent the turnover order.  The judgment also found that Carney had used

his law firm as a sham to perpetrate a fraud, that his law firm was Carney's alter ego, and that the

corporate veil of the law firm could be pierced.  The judgment also found that Carney set up the

Sean Henry Carney Trust dated November 1, 1987, and that this trust was dissolved on March 20,

1990.  The judgment also found that Carney alleged he established the "John Hatchet Carney &

Rena Shaw Carney Children's Trust" on March 20, 1990, under the terms of which Carney's father

was the trustee ("the Children's Trust").  The judgment also found that Carney had signed an

assignment for the Children's Trust, although he was not its trustee and had no authority to do so,

and that this assignment was invalid and unenforceable.

20.     The Noebel contempt judgment against Carney also found that on April 1, 1994, the

day he was served with a writ of execution, Carney purportedly executed a promissory note to his

father in the amount of $20,000 ("the Father's Note"), and a security agreement, whereby he pledged

as collateral proceeds from the *Interstate Adjusters Case*, and that thereafter, Carney paid his father

$8,000 from the November 1994 settlement proceeds from that case.  The judgment also found that,

on October 21, 1993, the day before the Noebel judgment was entered against him, Carney executed

a contract for deed with his father and paid his father a $20,000 down payment ("the Father's Deed

Debt") which he claims he borrowed from his professional corporation, but had no documents

reflecting such loan, and that Carney failed to produce documents pertaining to transactions with

his father.  The judgment also found that the Consent of Directors in Lieu of Organizational Meeting

of Whitehouse Enterprises, Inc. was altered and/or falsified after its execution to falsely attempt to

reflect that the Children's Trust owned Carney's interest in Whitehouse.  Carney never appealed the

Noebel contempt judgment that contained findings that Carney and his father participated in

fraudulent transfers of assets between themselves and fraudulently used trusts to avoid creditors'

claims, as to which Carney failed to produce supporting documents although court-ordered to do so, and Carney is collaterally estopped from attempting to prove otherwise herein.

21.     Due to Carney's alleged violations of the Noebel Turnover Order, State District Court Judge Leonard Hoffman held Carney in contempt of court, and ordered that he be incarcerated in the Dallas County jail for six months.[1]  To avoid complying with contempt order, on the same day it was signed, on January 25, 1995, Carney filed a Chapter 7 bankruptcy, Case No. 95-395-30431-HCA-7, U.S. Bankruptcy Court, Northern District of Texas, Dallas Division.

22.    On February 9, 1995, John Henry Carney, Carney's father, filed a motion to dissolve a restraining order against Carney in his bankruptcy case, claiming that he ("Movant") "is a creditor of the Debtor with claims on various assets of the Debtor including ... a second lien position on the Debtor's stock in ... John H. Carney & Associates, P.C.", and that the order effectively shuts down the P.C.

23.    On February 22, 1995, Carney filed his bankruptcy schedules, disclosing his residence at 3999 Goodfellow in Dallas as his real property although, at the time, the Goodfellow house was titled to the Hatchett Land & Development Company.

24.     On November 30, 2001, Bankruptcy Judge Abramson signed an order compelling Carney to provide complete responses to the United States' post-judgment interrogatories, and to answer questions he refused to answer at his November 2, 2001 post-judgment deposition, including to identify the assets of Hatchett Land & Development Company, and ordered the post-judgment

---

[1]Carney did not appeal the contempt judgment, but to challenge the contempt order, he filed a petition for writ of habeas corpus, and on July 7, 1995, in Ex Parte John H. Carney, Relator, 903 S.W.2d 345 (Tex. 1995), the Texas Supreme Court held that Noebel's motion for contempt failed to give Carney adequate notice (although Carney attended the hearing on the motion for contempt), granted Carney's petition for writ of habeas corpus, and found the contempt order void.

deposition of John Henry Carney, Carney's father.  On December 11, 2001, Carney provided

supplemental responses to the United States' post-judgment interrogatories, and identified the

Hatchett Ranch (described below), 3999 Goodfellow, and a Fidelity account of $22,785.07 as the

assets of Hatchett Land & Development Company, although he had scheduled Goodfellow as his

homestead in his bankruptcy, without identifying Hatchett Land & Development as an owner or co-

owner of the property.

    25.   On December 18, 2001, the United States took the post-judgment deposition of John

Henry Carney, Carney's father, in Carney's bankruptcy adversary proceeding, which was filed by

Carney against the United States to dispute his federal tax debts and their dischargeability.  Exhibit

5 to this deposition was a federal income tax return filing and payment history chart, showing John

Hatchett Carney failed to pay income tax for nearly every year from 1984-2000.  Through this

deposition, the United States learned that John Henry Carney executed the Hatchett Trust agreement

in December of 2000, when he knew the IRS had a large judgment against his son, but he testified

that he was not aware of the judgment amount until his deposition, but he thought it was less than

$300,000.  Although, at the time of Mr. Carney's post-judgment deposition, 3999 Goodfellow was

titled to Hatchett Land & Development Company, Mr. Carney testified that he was the 100% owner

of this house.[2]  Mr. Carney also testified that the only asset of the Hatchett Trust (also known as the

Hatchett Irrevocable Trust) was $20,000.  He testified that his son and daughter, Jeanne Gregory,

were beneficiaries of the trusts he set up.  On June 1, 1995, Mr. Carney filed a proof of claim in the

amount of $29,671.52 in his son's bankruptcy, but on November 21, 2001, Bankruptcy Judge

---

    [2]Between 1984 and 2005, there were multiple transfers of the Goodfellow house between Carney
and his father, Hatchett Land & Development Company, and the Carney trusts, including a contract for
deed between Carney and his father dated in 1984 but not notarized.

Abramson entered an order sustaining the bankruptcy trustee's objection to this claim and disallowing it.  The basis of this claim was Mr. Carney's alleged liens against his son's vehicles to secure payment of a loan.

26.     On April 3, 2012, John Henry Carney passed away after a long illness, and the only beneficiary of his estate is the John Henry Carney Living Trust.  Hatchett Land & Development Company is not listed as an asset of Mr. Carney's probate estate.  On January 3, 2012, when he was attempting to negotiate a settlement of his federal income tax debt, John Hatchett Carney formed Hatchett Land & Development LLC, with himself and his father as the only disclosed managers, when his father was ill and 81 years old.

## F.   CARNEY'S PURCHASE OF THE STRAIT LANE RESIDENCE

27.     On April 14, 2004, when Carney was indebted to the IRS for over a million dollars in federal income and employment  taxes, he purchased an expensive residence at 11484 Strait Lane in Dallas, Texas ("the Strait Lane Residence"), and titled it to the Hatchett Trust.   On information and belief, Carney invested at least $100,000 of his own funds as the down payment on the purchase of the residence, which he obtained from liquidating two investment accounts he set up in the names of his children or children's trusts.  The legal description of the residence is as follows:

> Being Lot 3, Block 8/6392 of HOCKADAY SQUARE, an addition to the City of Dallas, Dallas County, Texas, according to the Plat thereof recorded in Volume 31, Page 79, Map Records, Dallas County, Texas, and being more commonly referred to as 11484 Strait Lane, Dallas, Dallas County, Texas 75229.

This residence has a county tax-assessed value of over $819,850, and is at least 5,390 square feet, one and a half stories, and has a pool.  However, Carney exercises full dominion and control over this residence, and he made payments on the Plains Capital Bank mortgage that previously

encumbered the residence. The utility bills for the Strait Lane Residence are mailed to Carney at his law office, and Carney pays these bills.  Carney also pays the ad valorem taxes pertaining to the Strait Lane Residence, and all other expenses pertaining to the residence.

28.     On or about July 12, 2004, Carney's father, John Henry Carney, executed a $487,000.00 promissory note, deed of trust, security agreement and assignment of rents, leases, incomes and agreements, in favor of Plains Capital Bank, secured by the Strait Lane Residence, to provide funding for Carney to renovate the residence.   On or about November 29, 2004, Carney incorporated Vandaveer Commercial Construction, Inc., of which he was the registered agent, apparently to act as a general contractor for the residence renovation project, with Lisa Vandaveer, Carney's ex-wife, as its director.  Ms. Vandaveer is, on information and belief, a general contractor, who oversaw the remodeling of the Strait Lane Residence at Carney's behest.

29.   From approximately September 17, 2004 to December 6, 2004, Carney, through the Hatchett Trust, in care of Dolph Haas, Carney's law office manager, at the address of Carney's law office, contracted for Alpha Plumbing & Leak Location Services, Inc. to provide plumbing services at the Strait Lane Residence, but failed to pay for these services.  Therefore, on April 26, 2005, Alpha Plumbing filed a mechanic's and materialman's lien against the Hatchett Trust and the residence, in the amount of $33,936.88, Instrument 3331332, Volume 2005-081, Page 08956, in the Dallas County real property records.  This lien stated that "John H. Carney is the Trustee and Lisa Vandaveer is the contractor" and is in direct contact with the owner of the Strait Lane Residence, and attached delinquent invoices for the plumbing work.  This lien was later released.

30.     On or about January 30, 2006, Carney had his father, as trustee of the Hatchett Trust, execute a $19,060.11 promissory note, deed of trust, and related documents, secured by the Strait

Lane Residence.  On or about January 10, 2011, Plains Capital Bank signed assignment of loan documents, assigning the $487,000.00 and $19,060.11 promissory notes in favor of Plains to Norma Loesch Carney, as Trustee of the John Hatchett Carney Trust.  On information and belief, these loans have been fully paid, and there is currently no mortgage debt against the Strait Lane Residence.

## F.  CARNEY'S ACQUISITION OF CALLAHAN COUNTY RANCH PROPERTIES

31.    John Hatchett Carney, through the John Henry Carney Trust and the John Hatchett Carney Trust, has an interest in at least 29 different tracts of land exceeding 4,000 acres in Callahan County, Baird, Texas known as the Hatchett Ranch, including fee simple interests in real property, mineral interests, and oil and gas interests.  In some of this property, Carney shares an interest with his cousins, the Gryska defendants herein, and in some of it, he shares an interest with his sister, Jeanne Carney Gregory.

32.    In the early 1980s, Rena Belle Hatchett Carney and her husband Dr. Henry J. Carney, the grandparents of John Hatchett Carney, began transferring their interest in the Hatchett Ranch, acreage in Callahan County, Texas, to John Henry Carney and Barbara Jean Carney Gryska, Carney's father and paternal aunt.  John Henry Carney subsequently transferred his interest in the Hatchett Ranch to the John Henry Carney Trust.  Subsequently, John Henry Carney transferred most of the Callahan County property titled to John Henry Carney Trust to the John Hatchett Carney Trust.  On information and belief, the transfer from one trust to another violated the terms of the first trust.

33.    On or about December 25, 2010, Carney's father, John Henry Carney, as trustee of the John H. Carney Trust, as grantor, executed a gift deed with special warranty, transferring to the John

Hatchett Carney Trust an undivided 21 acres, as tenant in common, with the John H. Carney Trust

and Carney's cousins, Paul Gryska, Peter Gryska, John Gryska, and Alexander Gryska, but reserved

upon the grantor all of grantor's interest in minerals, oil, gas and other hydrocarbon substances on

and under the real property.  The legal description of this property is as follows:

AN UNDIVIDED INTEREST IN 21 ACRES, AS TENANTS IN COMMON OF THE
FOLLOWING DESCRIBED RANCH LAND IN CALLAHAN COUNTY, TEXAS,
(HEREINAFTER REFERRED TO AS THE "2010 PROPERTY"), RESERVING HOWEVER
UNTO GRANTOR ALL OF THE GRANTOR'S INTEREST IN MINERALS, OIL, GAS AND
OTHER HYDROCARBON SUBSTANCES ON AND UNDER THE REAL PROPERTY:

**In and to that certain lot, tract or parcel of land situated in Callahan County, Texas**
**as described as follows to wit:**

The West One-half (W ½) of Section 25, Deaf & Dumb Asylum Lands, Callahan
County, Texas, containing 320 acres, more or less;

The Southwest one-fourth (SW 1/4) of Section 18, Deaf & Dumb Asylum Lands,
Callahan County, Texas, Containing 160 acres, more or less;

The South one-half (S ½) of Section 19, Deaf & Dumb Asylum Lands, Callahan
County, Texas, containing 320 acres of land more or less;
The North one-half (N ½) of Section 24, Deaf & Dumb Asylum Lands, Callahan
County, Texas, containing 320 acres of land, more or less;

And containing in the aggregate 1,120 acres of land, more or less, and an entire
interest in and to that certain lot, tract or parcel of land situated in Callahan County, Texas;

**SAVE AND EXCEPT the following described part or parcel of the land just described:**

Being 75.758 acres of land, more or less, out of the NW corner of Sec. 24 and SW
corner of Sec. 19 of the D&DA Lands, Callahan County, Texas (remaining metes and
bounds description omitted).

This deed was filed in the real property records of Callahan County, Texas on or about May 31,

2011 and June 2, 2011, at Volume 244, Pages 447-450, and returned by mail to John H. Carney &

Assoc., One Meadows Bldg., 5005 Greenville Ave., Ste. 200, Dallas, TX 75206.

34.     On or about April 7, 2011, John Henry Carney, Trustee of the John H. Carney Trust,

as grantor, executed a gift deed with special warranty, transferring as a gift to the John Hatchett

Carney Trust, the following described property:

> An undivided 21 acres, as tenant in common with grantor and Paul Gryska, Peter Gryska,
> John Gryska, and Alexander Gryska, but reserving unto grantor all grantor's interest in
> all minerals, oil, gas and other hydrocarbon substances on and under the real property,
> described as follows:

AN UNDIVIDED INTEREST IN 21 ACRES, AS TENANTS IN COMMON OF THE
FOLLOWING DESCRIBED RANCH LAND IN CALLAHAN COUNTY, TEXAS,
(HEREINAFTER REFERRED TO AS THE "2010 PROPERTY"), RESERVING HOWEVER
UNTO GRANTOR ALL OF THE GRANTOR'S INTEREST IN MINERALS, OIL, GAS AND
OTHER HYDROCARBON SUBSTANCES ON AND UNDER THE REAL PROPERTY:

**In and to that certain lot, tract or parcel of land situated in Callahan County, Texas
as described as follows to wit:**

The West One-half (W ½) of Section 25, Deaf & Dumb Asylum Lands, Callahan
County, Texas, containing 320 acres, more or less;

The Southwest one-fourth (SW 1/4) of Section 18, Deaf & Dumb Asylum Lands,
Callahan County, Texas, Containing 160 acres, more or less;

The South one-half (S ½) of Section 19, Deaf & Dumb Asylum Lands, Callahan
County, Texas, containing 320 acres of land more or less;

The North one-half (N ½) of Section 24, Deaf & Dumb Asylum Lands, Callahan
County, Texas, containing 320 acres of land, more or less;

And containing in the aggregate 1,120 acres of land, more or less, and an entire
interest in and to that certain lot, tract or parcel of land situated in Callahan County, Texas;

**SAVE AND EXCEPT the following described part or parcel of the land just described:**

Being 75.758 acres of land, more or less, out of the NW corner of Sec. 24 and SW
corner of Sec. 19 of the D&DA Lands, Callahan County, Texas (remaining metes and
bounds description omitted).

This gift deed was recorded in the real property records of Callahan County, Texas on June 9, 2011

and June 13, 2011, at Vol. 244, Pages 799-802, and returned by mail to Bridgette Smiley, John H.

Carney & Assoc., One Meadows Bldg., 5005 Greenville Ave., Ste. 200, Dallas, TX 75206.

  35.  On or about August 17, 2011, John Henry Carney, as trustee of the John H. Carney

Trust, grantor, executed a gift deed with special warranty, transferring to the John Hatchett Carney

Trust, grantee by gift, the following described property:

> An undivided 981.25 acres, when combined with the prior gift deeds to grantee
> constitutes all of grantor's remaining interest in and to an undivided 50% of the
> 1044 acres Hatchett ranch as tenant in common with grantor and Paul Gryska,
> Peter Gryska, John Gryska and Alexander Gryska who together hold 50% of
> those certain tracts or parcels of land in Callahan County, Texas, but reserving
> to grantor all of grantor's interests in all minerals, oil, gas and other hydrocarbon
> substances on an under the real property described as follows:

The West One-half (W ½) of Section 25, Deaf & Dumb Asylum Lands, Callahan
County, Texas, containing 320 acres, more or less;

The Southwest one-fourth (SW 1/4) of Section 18, Deaf & Dumb Asylum Lands,
Callahan County, Texas, Containing 160 acres, more or less;

The South one-half (S ½) of Section 19, Deaf & Dumb Asylum Lands, Callahan
County, Texas, containing 320 acres of land more or less;

The North one-half (N ½) of Section 24, Deaf & Dumb Asylum Lands, Callahan
County, Texas, containing 320 acres of land, more or less;

And containing in the aggregate 1,120 acres of land, more or less, and an entire
interest in and to that certain lot, tract or parcel of land situated in Callahan County, Texas;

**SAVE AND EXCEPT the following described part or parcel of the land just described:**

Being 75.758 acres of land, more or less, out of the NW corner of Sec. 24 and SW
corner of Sec. 19 of the D&DA Lands, Callahan County, Texas (remaining metes and
bounds description omitted).

This deed was recorded on August 19, 2011 and August 26, 2011 at Vol. 247, Pages 645-648 of the

real property records of Callahan County, Texas, and returned to John H. Carney & Associates, 5005

Greenville Avenue, Suite 200, Dallas, TX 75206.

    36.    On or about August 18, 2011, John Henry Carney, as trustee of the John H. Carney

Trust, grantor, executed a grant deed with special warranty, transferring to the John Hatchett Carney

Trust by gift, the following described property:

ALL RIGHT TITLE AND INTEREST IN 75.75 ACRES, IN AND TO THE
FOLLOWING DESCRIBED RANCH LAND IN CALLAHAN COUNTY,
TEXAS, RESERVING HOWEVER UNTO GRANTOR ALL OF GRANTOR'S
INTEREST IN MINERALS, OIL, GAS AND OTHER HYDROCARBON
SUBSTANCES ON AND UNDER THE REAL PROPERTY:

In and to that certain lot, tract or parcel of land situated in Callahan County, Texas
as described as follows to wit:

Being 75.758 acres, more or less, and buildings thereon, out of the NW corner of
Sec. 24 and SW corner of Sec. 19 of the D&DA Lands, Callahan County, Texas
(metes and bounds description omitted).

This deed was recorded on February 28, 2012 and February 29, 2012 in the real property records

of Callahan County, Texas, at Vol. 254, Pages 357-360, and returned to Bridgette Smiley at John

H. Carney & Assoc., 5005 Greenville Ave., Ste. 200, Dallas, TX 75206.

    37.    On or about August 18, 2011, John Henry Carney, as trustee of the John Henry Carney

Revocable Oil and Gas Trust, signed a mineral deed, whereby he conveyed a 50% interest each to

the John Hatchett Carney Trust and Jeanne (Carney) Gregory of the mineral interests in 29 tracts

comprising a total of 4,413 acres of real property in Callahan County, Texas, more particularly

described in the deed recorded on February 28, 2012 and February 29, 2012 at Vol. 254, Pages 361-365.  This deed was returned to John H. Carney & Assoc., 5005 Greenville Ave., Ste. 200, Dallas, TX 75206.  On March 9 and 13, 2012, a mineral deed (correction deed) pertaining to this property (described as 4,547 acres, not 4,413 acres) was filed in Callahan County, at Vol. 254, Pages 783-787, Doc. # 120486.  The correction deed was signed by John Henry Carney and returned to Bridgette Smiley, John H. Carney & Assoc., 5005 Greenville Ave., Dallas, TX 75206.

38.     On information and belief, John Hatchett Carney also has an interest in the following described real property in Callahan County, Texas titled to the John Henry Carney Trust, of which Norma Carney is the trustee:

A.     An undivided one-half interest in 80 acres, 745 24 McCluskey, location 0 CARC10280, more particularly described in a special warranty deed recorded February 16, 2006 at Volume 170, Page 951, of the deed records of Callahan County, Texas; noted PIDN: R000004964 GEO: 0745002400101;

B.     An undivided one-half interest in 160 acres, 769 18 W F Paul, location 0 CARC11089, more particularly described in a special warranty deed recorded February 16, 2006 at Volume 170, Page 951, of the deed records of Callahan County, Texas; noted PIDN: R000005095 GEO: 0769001800101;

C.     An undivided one-half interest in 99.280 acres, 782 19 E S Seay, location 0 CARC11603, more particularly described in a deed dated February 16, 2006, recorded at Volume 170, Page 951, of the deed records of Callahan County, Texas; noted: PIDN: R000005147; GEO: 0782001900103;

D.   An undivided one-half interest in 160 acres, Abst. 1127, Sec. 19 S E Webb, more particularly described in a deed recorded February 16, 2006 at Volume 170, Page 951, of the deed records of Callahan County, Texas;

E.   An undivided one-half interest in 160 acres, 1769 25 WH Williams, location 0 CARC08905, more particularly described in a special warranty deed, recorded February 16, 2006 at Volume 170, Page 951, of the deed records of Callahan County, Texas; noted PIDN R000009702 GEO: 1769002500101;

F.   An undivided one-half interest in 209.640 acres, 1781 24 F E Alvord, location 0 CAR118891, more particularly described in a special warranty deed recorded February 16, 2006 at Volume 170, Page 951, of the deed records of Callahan County, Texas; noted PIDN R000009733 GEO: 1781002400301; and

G.   An undivided one-half interest in 160 acres, 1822 25 WH Williams, location 0 CARC07292, more particularly described in a deed recorded February 16, 2006 at Volume 170, Page 951, of the deed records of Callahan County, Texas; noted PIDN R000009867 GEO: 1822002500101.

39.   On information and belief, Carney has an interest in the following described property in Callahan County, Texas, titled to the John Hatchett Carney Trust:

A.   60.720 acres, 782 19 E S Seay, location 5700 Private Road 4883, more particularly described in a gift deed with special warranty recorded February 28, 2012 at Volume 254, Page 357, of the deed records of Callahan County, Texas; noted to PIDN: R000005145 GEO: 0782001900101; and

B.      15.180 acres, 1781 24 F E Alvord, location 0 CARC12871, more particularly described in a deed dated February 29, 2012, recorded at Volume 254, Page 357, of the deed records of Callahan County, Texas; noted to PIDN: R000009730 GEO: 1781002400100;

39.      On information and belief, Carney, individually and/or through the John Hatchett Carney Trust, has an interest in an oil and gas lease with Quest Energy Management Group, Inc. dated April 15, 2011, No. 110795, recorded at Vol. 243, Pages 103-110, on April 25, 2011 and April 28, 2011, and others, including, but not limited to, Lease Nos. 130071, 97886, 97887, 99045, 106873, 109043, and 11653, recorded in the real property records of Callahan County, Texas, to which the federal tax liens filed in Callahan County, Texas referred to above attach.

41.     Indicia of John Hatchett Carney's interest in the Hatchett Ranch include, but are not limited to, the following:

A.     Carney has told some people that he owns the Hatchett Ranch or a portion of the Hatchett Ranch;

B.     Within the past year, Carney had plans drawn up to renovate the cabin on the ranch, and Carney planned to spend at least $100,000 renovating the cabin and enlarging it by 1,200 square feet;

C.     Carney stores several of his vehicles on the Hatchett Ranch, including a grey Ford pickup truck and an Isuzu Trooper, and allows a friend of his to store his Jeep there;

D.     Carney's furniture and a cache of his weapons are in the cabin on the Hatchett Ranch;

E.     Carney has taken people hunting at the ranch, and allows friends of his to use the Hatchett Ranch for hunting, even when he is not physically present at the ranch.

## COUNT I
## REDUCE TAX ASSESSMENTS TO JUDGMENT

42.     John Carney owes the United States the sum of **$5,320,774.38** (excluding his income tax for 1984-1987, 1989, 1992, and 1993 previously reduced to judgment), for his 2001-2010 federal

income (1040) tax, for his federal employment (941) tax for tax periods from June 30, 2000 to June 30, 2012, and for his federal unemployment (940) tax for tax years 1999 and 2010, plus interest, penalties, and statutory additions thereon after August 20, 2012 until paid, less any payments or credits.  The United States seeks to reduce these tax liabilities to judgment against John Carney.

## COUNT II
## FORECLOSE FEDERAL TAX LIENS AGAINST STRAIT LANE RESIDENCE

43.     The Strait Lane Residence that is the subject of this action, is described above, and is currently titled to the Hatchett Trust, a sham trust established and controlled by Carney.  Pursuant to 26 U.S.C. §§ 6321 and 6322, statutory federal tax liens arose in favor of the plaintiff, United States of America, against all property and rights to property, whether real or personal, belonging to Carney, as of the dates of the tax assessments described above, or acquired thereafter.  The Hatchett Trust is a self-settled trust established by Carney in an attempt to prevent the United States from collecting his federal tax debts.  Federal tax liens filed against Carney attach to Carney's interest in the Trust and the Strait Lane Residence.  See Shurley v. Texas Commerce Bank, 115 F.3d 333 (5th Cir. 1997) [creditors can reach assets of a self-settled trust established by a debtor to avoid his creditors' claims].  The United States seeks a judgment against Carney and the Hatchett Trust, foreclosing the tax liens against Carney, and ordering the Strait Lane Residence be sold in partial payment of the federal tax assessments against Carney, after payment of reasonable costs of sale and any ad valorem taxes.  The United States also asks the Court to determine the legitimacy of any mortgage or debt held by Norma Carney, as trustee of the John Hatchett Carney Trust or the Hatchett Trust, previously held by Plains Capital Bank.

## COUNT III
## DETERMINE THAT THE HATCHETT TRUST HOLDS TITLE TO THE STRAIT LANE RESIDENCE AS THE ALTER EGO OR NOMINEE OF CARNEY AND THAT HE IS THE TRUE OWNER OF THE STRAIT LANE RESIDENCE

44.    After Carney was indebted for over a million dollars in federal income and employment tax liabilities referred to above, he purchased the Strait Lane Residence, and titled it to the Hatchett Trust, with the assistance of his parents, the trustees.   After Carney purchased the residence and titled it to the Trust, he paid all expenses associated with the residence, lived there, and controlled it.   He also paid the ad valorem taxes on the Strait Lane Residence, and deducted them on his personal income tax returns.

### A.  Sham Trust/Alter Ego/Nominee

45.    The United States requests that the Court find that the Hatchett Trust is a nominee or alter ego of Carney, and find that Carney is the true owner of the Strait Lane Residence.  The Hatchett Trust is a self-settled trust of which Carney is the beneficiary, and it simply exists to hold title to Carney's residence and to prevent the United States from seizing it to collect Carney's massive federal tax debt.  Accordingly, the Strait Lane Residence is encumbered by the federal tax liens against Carney, which should be foreclosed, and the residence should be ordered sold to pay Carney's federal tax debts.

### B.  Fraudulent Transfer

46.    The establishment by Carney of the Hatchett Trust with the assistance of his parents, the purchase by Carney of the Strait Lane Residence, the transfer of Carney's funds into the Strait Lane Residence, and Carney's concealment of the residence in the name of the Trust, were intended to hinder, delay, or defraud the United States of taxes due.   Pursuant to §  24.005 of the Texas

Uniform Fraudulent Transfer Act ("TUFTA"), Chapter 24 of the Texas Business and Commerce Code, Carney's transfer of funds into the purchase of the residence and concealment of the residence in the name of the Trust, were fraudulent acts, and were of no effect as to the United States, who was a creditor of Carney when the transfer and concealment occurred.

47.     Carney's transfer of funds into the Strait Lane Residence was made without receiving reasonably equivalent value in exchange for the transfer. Therefore, pursuant to § 24.006 of the TUFTA, the transfer was fraudulent and of no effect as to the United States, and should be set aside by the Court.   The United States seeks to set aside as fraudulent the transfer of Carney's funds or concealment of title in the Strait Lane Residence in the name of the Hatchett Trust, a sham trust, and seeks a judgment extinguishing the interest of the Trust in that residence, ordering it sold in partial satisfaction of the federal tax debts of Carney, and subordinating any debt claimed by Norma Carney that is secured by the residence.

**COUNT IV**
**FORECLOSE FEDERAL TAX LIENS AGAINST CALLAHAN COUNTY PROPERTIES; DETERMINATION THAT CARNEY TRUSTS ARE NOMINEES OF JOHN HATCHETT CARNEY**

48.     The Callahan County, Texas real properties that are the subject of this action, are described above, and some are currently titled to the John Hatchett Carney Trust, a sham trust established and controlled by Carney.  In addition, some of the real property interests of Carney in Callahan County are titled to the John Henry Carney Trust, of which John Hatchett Carney is a beneficiary.  The properties titled to the John Henry Carney Trust Carney were transferred into this trust by John Henry Carney, and John Hatchett Carney is the only beneficiary of this trust. Accordingly, his interest is subject to the federal tax liens.   John Hatchett Carney also has an

interest in some of the mineral rights and leases of the Callahan County real properties described above, either through the John Hatchett Carney Trust and/or the John Henry Carney Trust.  Pursuant to 26 U.S.C. §§ 6321 and 6322, statutory federal tax liens arose in favor of the plaintiff, United States of America, against all property and rights to property, whether real or personal, belonging to Carney, as of the dates of the tax assessments described above, or acquired thereafter, in Callahan County.  The John Hatchett Carney Trust is trust established by Carney in an attempt to prevent the United States from collecting his federal tax debts.  Federal tax liens filed against Carney attach to Carney's interest in the Carney Trusts and the Callahan County real properties and mineral interests, as well as leases, described above.  See Shurley v. Texas Commerce Bank, 115 F.3d 333 (5th Cir. 1997).  The United States seeks a judgment against Carney, the Hatchett Trust, the John Hatchett Carney Trust, and/or the John Henry Carney Trust, finding that these trusts are nominees and/or alter egos of John Hatchett Carney, foreclosing the federal tax liens against Carney and the nominee federal tax liens against the Trusts, and ordering the Callahan County real properties, mineral interests, and lease interests sold in payment or partial payment of the federal tax assessments against Carney, after payment of reasonable costs of sale and any ad valorem taxes.  The United States also asks the Court to determine the interests of any co-owners of the Callahan County, Texas real properties, mineral interests, and lease interests, including the Gryskas and Jeanne Carney Gregory, and compensate them, if necessary, out of the net sales proceeds from the sales of these properties.

## COUNT V
## REQUEST FOR INJUNCTIVE RELIEF

49.   For the reasons stated above, the United States seeks an injunction requiring John Hatchett

Carney do the following for all employment taxes falling due after the injunction date:

a.  To timely make federal tax deposits, according to federal deposit regulations, of FUTA, FICA, and withholding tax liabilities;

b.  To timely file all federal employment and unemployment tax returns (Forms 940 and 941);

c.  To timely pay all tax liabilities due on each return;

d.  To be prohibited from paying other creditors or transferring funds to Carney directly or to any third party at his request before paying federal employment tax liabilities;

e.  To be prohibited from transferring any money or property to any entity or person for the purpose of having that entity or person pay the salaries or wages of Carney's employees; and

f.  To timely file monthly reports with the IRS attesting that all tax deposits have been made. I.R.C. § 7402(a) provides broad authority for the United States to seek and obtain civil injunctions, so long as injunctive relief is generally necessary or appropriate for the enforcement of the internal revenue laws.  U.S. v. Ernst & Whinney, 735 F.2d 1296, 1301 (11th Cir. 1984).  Before issuing an injunction, district courts have traditionally required the party seeking an injunction to establish the following four factors:  the party is substantially likely to prevail; the party faces a substantial threat of irreparable harm if the injunction is denied; the party faces a harm that outweighs any potential harm posed by the injunction to the defendant, and the injunction will not jeopardize the public interest.  See United States v. Buttorff, 761 F.2d 1056, 1059 (5th Cir. 1985).  However, where a statute explicitly authorizes an injunction, as does I.R.C. § 7402(a), the Fifth Circuit has modified the traditional factors, treating irreparable injury as presumed from the fact that the statute has been violated.  See Buttorff, 761 F.2d at 1059 and 1063 (statutory injunction case involving section 7408).

50.   The United States may appropriately seek injunctions under I.R.C. § 7402(a) to prohibit employers from future pyramiding of federal employment taxes when the employers and their responsible persons have demonstrated a history of pyramiding federal trust fund taxes and have proven impervious to IRS administrative collection remedies.

51.   I.R.C. §§ 3102(a) and 3402(a) require employers to withhold federal income and Federal Insurance Contributions Act ("FICA") taxes from their employees' wages. Employers hold these withheld taxes in trust for the United States and are generally required to deposit them on a regular basis, either monthly or semi-weekly.  See I.R.C. §§ 6302 and 7501.  Employers are also required to pay their own share of FICA taxes.  See I.R.C. § 3111. Carney is an employer through John H. Carney & Associates, his law firm, a sole proprietorship.  The Government has a substantial likelihood of success on the merits.

52.   The IRS has undertaken many years of extensive administrative collection efforts, and yet Carney refuses to cooperate.  Tax returns have been filed late, and tax deposits are unpaid or partially paid.  While some payments have been made, they appear at times to be motivated by a desire to avoid either enforced collection or to avoid providing information that would aid collection.  Certainly, there has been no genuine effort to pay the liabilities outstanding, as the above chart illustrates. Carney has transferred funds to different bank accounts to thwart collection, specifically the IRS levies.  IRS administrative remedies are inadequate to bring Carney into compliance, and he continues to avoid federal tax compliance and to hide assets.

53.   The only "harm" posed by an injunction to Carney is that he must file employment tax returns and pay his employment taxes when they are due.  Thus, Carney will

merely be required to follow the same federal tax laws every other employer must follow, not a harm for which he can justly complain. It is in the public's interest to order Carney to follow these laws because it is fundamentally unfair to other taxpayers that Carney conducts business without doing so. Moreover, the public has a fundamental interest in stopping the drain on the Treasury caused by Carney's pyramiding activities.

54.   Therefore, the United States seeks an injunction to stop Carney's continued employment tax pyramiding activity. While an injunction is an extraordinary remedy, it is appropriate to prevent further pyramiding, as Carney has shown no intention of stopping.

**COUNT VI**
**(TEN PERCENT SURCHARGE FOR COSTS OF COLLECTION)**

55.   28 U.S.C. § 3011 authorizes the United States to recover a surcharge of 10% of the amount of the debt in the event that the United States avails itself of the pre-judgment or post-judgment relief as set forth in Subchapter B or C of the Federal Debt Collection Procedure Act, 28 U.S.C. §§ 3001 *et. seq.,* in order to cover the cost of processing and handling the litigation and enforcement under this chapter of the claim for such debt. The United States requests that the Court impose the 10% surcharge against Carney, for costs of collection of his massive federal tax debts.

WHEREFORE, the United States respectfully requests that this court order, adjudge, and decree:

1.   That John Hatchett Carney is indebted to the United States in the amount of **$5,320,774.38,** for his 2001-2010 federal income (1040) tax, for his federal employment (941) tax for tax periods from June 30, 2000 to June 30, 2012, and for his federal

unemployment (940) tax for tax years 1999 and 2010, plus interest, penalties, and statutory additions thereon after August 20, 2012 until paid, less any payments or credits;

2.      That federal tax liens against Carney encumber the Strait Lane Residence and the Callahan County real properties, mineral interests, and leases described above, that those liens be foreclosed, that the Strait Lane Residence and Callahan County real properties, mineral interests, and lease interests be ordered sold by the Internal Revenue Service or a receiver, that the sales proceeds be first applied to the costs of the sale, then any unpaid ad valorem taxes, then the proceeds be applied in satisfaction or partial satisfaction of the tax liens of the United States and the federal tax debts of Carney;

3.      That the Hatchett Trust, the John Hatchett Carney Trust, and/or the John Henry Carney Trust are nominees or alter egos of Carney, and that Carney is the true owner of the Strait Lane Residence and is an owner or co-owner of the Callahan County real properties, mineral interests, and lease interests described above; that these are trusts of which Carney is the beneficiary, and they simply exist to hold title to Carney's residence and other real properties and to prevent the United States from seizing them to collect Carney's massive federal tax debt, and the residence and Callahan County real properties, mineral interests, and lease interests described above be ordered sold to pay Carney's federal tax debts;

4.      That the Hatchett Trust took its interest in the Strait Lane Residence, if any, subject to the federal tax liens against Carney, alternatively, that the transfer of the property was a fraudulent conveyance or fraudulent concealment and of no effect as to the claims of the United States, and that the transfer or concealment be set aside as fraudulent; and that the Strait Lane Residence be ordered sold to pay Carney's federal tax debts;

5.      That the Court determine the interests, if any, of the other defendants in the real

properties and leases made the subject of this lawsuit, and compensate them, if necessary,

from the proceeds from the sales of the properties;

6.      That a preliminary injunction and then a permanent injunction issue, to prevent

Carney from further pyramiding employment taxes and violating the Internal Revenue laws,

and to order that Carney shut down his law firm, John H. Carney & Associates, if he does

not comply with the preliminary and permanent injunctions and federal tax laws;

7.      That the United States be awarded a surcharge of ten percent of the amount of

Carney's tax debt under 28 U.S.C. § 3011, to cover the cost of the litigation and enforcement

of the claim for the tax debt, to be paid by Carney; and

8.      That the United States be awarded other such relief as is just and proper.


Respectfully submitted,


/s/   Ramona S. Notinger
RAMONA S. NOTINGER
Ramona.S.Notinger@usdoj.gov
Texas Bar No. 19158900
U.S. Department of Justice, Tax Division
717 N. Harwood, Suite 400
Dallas, Texas  75201
Telephone: (214) 880-9766   Fax:  (214) 880-9742

ATTORNEY FOR UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served via the ECF-system on October 19, 2012 on the following:

Thomas E. Shaw, P.C.
9304 Forest Lane
North Building, Ste. 252
Dallas, Texas 75243

William M. Ravkind, Esq.
One Meadows Bldg.
5005 Greenville Avenue, Ste. 200
Dallas, Texas  75206

Josh O. Ungerman, Esq.
Michael Villa, Jr.
Meadows Collier Reed Cousins
    Crouch & Ungerman LLP
901 Main Street, Suite 3700
Dallas, Texas 75202

*/s/   Ramona S. Notinger*
RAMONA S. NOTINGER